BRAMMER v. SCHROEDER.

(Circuit Court of Appeals, Eighth Circuit. February 25, 1901.)

No. 1,420.

1. PRIMARY AND SECONDARY PATENTS—APPLICATION OF DOCTRINE OF MECHANICAL EQUIVALENTS.

One who invents and secures a patent for a machine or combination which first performs a useful function is protected thereby against all machines or combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes and claims, or colorable evasions of it.

2. MECHANICAL EQUIVALENTS—INTERPRETATION.

The term "mechanical equivalent," when applied to the interpretation of a pioneer patent, has a broad and generous signification; but when it is applied to a slight and almost immaterial improvement in the progress of an art it has a very narrow and limited meaning, while in its application to all that great mass of inventions which falls between the two extremes its significance is proportioned to the character of the advance or invention under consideration, and is so interpreted by the courts as to protect the inventor against piracy and the public against unauthorized monopoly.

3. COMBINATION PATENTS—LAW OF MECHANICAL EQUIVALENTS HAS SAME APPLICATION AS TO OTHER PATENTS.

The doctrine of mechanical equivalents is governed by the same rules and has the same application in a case in which the infringement of a patent for a combination is in question as in cases where the issues are over the infringement of patents for machines or compositions of matter.

4. PATENT FOR COMBINATION—INFRINGEMENT NOT AVOIDED BY USE OF DIFFERENT MEANS OF OPERATION.

One who appropriates a new and useful patented combination cannot escape infringement by the use of mechanical devices to unite or operate the elements of the combination which differ from those which are pointed out for the purpose, but which are not claimed in the patent.

5. DRAWINGS PART OF SPECIFICATION OF PATENT.

Drawings are a part of the specification of a patent, and for the purpose of ascertaining the sufficiency of the description of the invention must be read with it.

6. CLAIM OF PATENT NOT INVALID FOR FAILURE TO INCLUDE OBVIOUS OPERATIVE DEVICES.

A claim for a machine or for a combination of mechanical devices is not invalid or insufficient because it fails to include mechanical devices for uniting or operating the machine or combination which readily suggest themselves to a mechanic skilled in the art, or which are pointed out in the specification and drawings as means for the purpose.

7. FIRST CLAIM OF LETTERS PATENT NO. 535,465 SUSTAINED.

The first claim of letters patent No. 535,465, to John Schroeder, for improvements in means for operating washing machines, is sustained.

8. Patent No. 535,465 Infringed by Combination Secured by Patent No. 606,044.

A combination of mechanical devices described in and claimed by letters patent No. 606,044, to Henry F. Brammer, infringes the first claim of letters patent No. 535,465.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

·Paul Bakewell and W. J. Roberts (L. G. Susemihl and F. R. Cornwall, on the brief), for appellant.

Frank D. Thomason, for appellee.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

SANBORN, Circuit Judge. This is an appeal from a decree adjudging the appellant, Henry F. Brammer, to be guilty of an infringement of the first claim of letters patent No. 535,465, for improvements in the means for operating washing machines, issued to the appellee, John Schroeder, on March 12, 1895, upon an application filed by him on October 23, 1894. The machine by which the alleged infringement was effected was constructed in accordance with the description contained in letters patent No. 606,044, issued to Henry F. Brammer on June 21, 1898. The subject of these inventions was the translation of the continuous rotary motion of a horizontal shaft in the same direction into the reciprocating rotary motion of a vertical shaft in opposite directions. The problem which the inventors were seeking to solve was to provide the simplest and most efficient means to accomplish this translation. Each used a combination of mechanical devices to solve this question, and the serious issue in this case is whether or not the combination of the appellant was an infringement upon that claimed and secured by the grant to the appellee. Of course, Schroeder was not the first to conceive the idea, or to provide some means of translating continuous rotary into reciprocating rotary motion. The problem is as old as mechanics, and doubtless its solution is nearly as old as the question. Many devices had been conceived and many means had been provided to accomplish the desired end before either of these parties entered the field, so that neither can be said to be a pioneer in this department in mechanics in the broad and general sense of that term. The appellee claims, however, that he has invented and secured by his patent a new and useful combination of mechanical elements to accomplish the desideratum which they were both seeking, and that the appellant has departed from the old combinations and devices, which were open to him, and has appropriated and used the combination of elements claimed in and secured to him in his earlier patent, or a combination of some of these elements with obvious mechanical equivalents of others. The appellant insists that he has not used all the constituent elements of Schroeder's patent, and that the doctrine of mechanical equivalents has no application, or a very limited application, to a case of an infringement of

a patent for a combination, and that under this rule he is not an infringer.

It is not true, however, that the doctrine of mechanical equivalents is inapplicable to an infringement of a combination. A novel combination of old elements which accomplishes a new and useful result, or one which accomplishes an old result in a new and better way, is as much entitled to a patent under the statutes of the United States as an invention of a machine or a composition of matter, and a patent for it is protected by every rule and presumption of law applicable to any infringement of this character. It may be, and undoubtedly is, true that the doctrine of mechanical equivalents has a very limited application to a large majority of patents for combinations; but that is not because they are patents for combinations, but because they are not primary inventions. The general rule of the patent law is that one who invents and secures a patent for a machine or combination which first performs a useful function is thereby protected against all machines and combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes and claims, or mere colorable evasions of it. Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 440, 23 C. C. A. 223, 231, 40 U. S. App. 482, 498; Stirrat v. Manufacturing Co., 61 Fed. 980, 981, 10 C. C. A. 216, 217, 27 U. S. App. 13, 42; McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053. In other words, the term "mechanical equivalent," when applied to the interpretation of a pioneer patent, has a broad and generous signification; but where it is applied to a slight and almost immaterial improvement in the progress of an art it has a very narrow and limited meaning, while in its application to all that great mass of inventions which falls between the two extremes its significance is proportioned to the character of the advance or invention under consideration, and is so interpreted by the courts as to protect the inventor against piracy and the public against unauthorized monopoly. This general rule of law, like every other principle of jurisprudence, applies equally to all patents, whether for combinations, machines, or compositions of matter. In the very nature of things, patents for combinations are generally issued when the art to which they relate is old, when other means have been used to accomplish the desired result, and when the state of the art is such that the field for invention is narrow. The very fact that they are combinations of old elements indicates that they usually come into existence when the art they illustrate is not new. The result is that in most cases patents for combinations secure secondary inventions, mere improvements in the means of doing those things which had been well done before; and for this reason, and not because they are patents for combinations, rather than for machines, they are generally not entitled to a broad application of the doctrine of mechanical equivalents. If, however, one invents and secures a patent for a new

combination of old mechanical elements which first performs a useful function, he is protected against all machines and combinations which perform the same function by equivalent mechanical devices to the same extent and in the same way as one who invents and patents a machine or composition of matter of like primary character. The doctrine of mechanical equivalents is governed by the same rules and has the same application when the infringement of a patent for a combination is in question as when the issue is over the infringement of a patent for any other invention. Imhaeuser v. Buerk, 101 U. S. 647, 653, 25 L. Ed. 945; Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435, 437, 27 U. S. App. 122, 150; Thomson v. Bank, 53 Fed. 250, 253, 3 C. C. A. 518, 521, 10 U. S. App. 500, 509; Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 27 L. Ed. 979; Water-Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024; Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; National Cash Register Co. v. American Cash-Register Co., 53 Fed. 367, 373, 3 C. C. A. 559, 565, 3 U. S. App. 340, 357; Belding Mfg. Co. v. Challenge Corn-Planter Co., 152 U. S. 100, 14 Sup. Ct. 492, 38 L. Ed. 370.

Now, the devices used by the appellant were not identical with those described in the patent to the appellee, and thus the infringement resolves itself into the question whether or not the field for invention was so broad when the appellee secured his patent, and his invention was so striking and meritorious, that the mechanical elements used by Brammer in his later combination are really the mechanical equivalents of those described by Schroeder in his patent, under the rules of law to which we have adverted. The respective devices of the two parties are best shown by the following drawings, the first of which illustrates the combination of the appellee, and the second that of the appellant:

The machine of the appellee is operated by revolving the shaft, O, and the pinion, R, thereon continuously in the same direction. The vertical shaft, B, is angular in form above the cover of the washtub, and the cylinder or sleeve, I, is provided with a corresponding opening, so that it will slide vertically on the shaft, B, and yet, when revolved, will turn the shaft with it. This cylinder is provided with a double row of cogs, J. The number of cogs in each row corresponds with the number of cogs on the pinion, R. At each end of this double row of teeth is a large tooth, L, and in the pinion, R, there is a corresponding space prepared to receive this large tooth as the pinion rotates. A portion of the cylinder, I, in the form of an ellipse, is cut away or recessed, and the end of the shaft, O, is extended into this recess in the cylinder, so that as the latter is revolved the end of the shaft will constantly engage with the flange of the cylinder formed by the recess, and will in this way keep the cogs of the pinion and the cogs of the double row of teeth in mesh. If the cylinder, I, is in the position shown in the drawing, and the shaft, O, is revolved, the pinion, R, rotates the cylinder and the shaft, B, within it, in one direction, until the large tooth, L, strikes the space in the pinion prepared for it, when the pinion carries the double row of teeth and the cylinder downward on the shaft, B, until the row of cogs on the upper side of the double row meshes with the cogs on the lower side of the pinion, when the pinion will rotate the cylinder and the shaft within it in the opposite direction, until the large tooth, L, on the other side of the row, is reached. The latter tooth, when reached, falls into the space prepared for it in the pinion, and then the pinion raises the cylinder on the shaft, B, until the lower row of teeth meshes with those on the upper portion of the pinion, and thus a continuous planetary motion around the pinion is imparted to the double row of teeth, and a reciprocating rotary motion to the cylinder and the shaft within it, without moving the shaft vertically in either direction. The claim of the appellee, which was found to be infringed by the court below, reads in this way:

"An operating shaft having a rotary reciprocating motion, a cylinder placed upon the shaft and having a sliding movement thereon, and through which cylinder motion is alone communicated to the shaft, and a double row of teeth or cogs upon the cylinder, extending at an angle to the shaft, combined with a driving shaft having means for revolving it attached to one end, and a wheel for engaging the teeth on the cylinder at the other, the driving shaft being driven continuously in one direction, substantially as shown."

Turning, now, to the cut of the device of the appellant, the shaft, D, and the pinion, F, on the end of it, constitute the driving force, and are continuously revolved in the same direction. The vertical shaft, G, is angular in form above the cover of the washtub, and the spool-shaped sleeve or cylinder, L, is provided with a corresponding opening, so that it will slide vertically on the shaft, G, and yet, when revolved, will rotate the shaft with it. The ends of this cylinder are formed into two beveled wheels, with cogs facing each other suitable to engage with the cogs of the pinion, F. Among the teeth upon each of these wheels are three which are higher than those on the

remainder of the wheel, the middle one of which, N, is higher and wider than the other two, so that when it strikes the teeth of the pinion it does not insert itself between them, but rides upon them, throws its wheel out of gear with the pinion, and causes the latter to mesh with the opposite wheel. The lower wheel has a flange, about three-quarters of the distance around it, which, by resting upon the lugs, S and T, respectively, supports the cylinder alternately in its higher and lower position as it is operated. The break in this flange and the large teeth upon the two wheels fall in the same vertical line. If the cylinder, L, is in the position shown in the cut, and the shaft, D, is revolved continuously in the same direction, the pinion, F, rotates the cylinder, L, and the shaft, D, within it, in one direction, until the large tooth, N, in the lower wheel of the cylinder, strikes the pinion. When that tooth strikes upon the cogs of the pinion, it slides the cylinder downward on the shaft, G, disengages the pinion from the lower wheel, and meshes it with the upper wheel, and thus causes the cylinder and the shaft within it to rotate in the opposite direction until the pinion reaches the large tooth in the upper wheel. When that tooth is reached, it strikes on the cogs of the pinion, and forces the cylinder upward until the pinion is disengaged from the upper wheel and meshes with the cogs of the lower wheel, when the direction of the cylinder and of the shaft within it is again changed, and thus the continuous revolution of the horizontal driving shaft in one direction produces the reciprocating rotary motion of the vertical shaft by means of the sliding cylinder upon it.

It will be seen from this brief description of the two devices that each is a combination of (1) a horizontal driving shaft with a pinion on its end, (2) a vertical operating shaft of angular form above the cover of the tub, and (3) a cylinder which is provided with teeth adapted to engage the cogs of the pinion, and which slides upon and communicates motion to the operating shaft; that there is no substantial difference in the forms, functions, or methods of operation of the shafts and pinions of the two combinations; and that the only real question is whether or not the spool-shaped, gear-bearing cylinder of Brammer is the mechanical equivalent of the cog-bearing cylinder of Schroeder. The breadth of the field open to the appellee when he made his invention, and hence the breadth of the meaning of the term "mechanical equivalent" when applied to his combination, determines the answer to this question. In other words, the state of the art when Schroeder made his combination conditions the answer. Turning to the history of the prior art as it is disclosed by the record before us, we find these striking illustrations of its progress before, and of its state at the time, he made his invention:

On October 1, 1872, letters patent No. 131,902 were issued to George H. Pittman for an improved hoisting machine, in which reciprocating rotary motion was imparted to a draft roller or pulley by a driving shaft, which was continuously revolved in the same direction. In the machine described in this patent, a pinion provided with beveled gearing, located on the end of a horizontal roller or pulley, was made to engage alternately with each of two horizontal wheels,

which faced each other, carried beveled gearing, and were secured to a vertical driving shaft. The pinion on the roller was placed between these wheels, which were so located that, when the cogs on the pinion were engaged with the gearing of one of these wheels, they would be disengaged from that of the other. The journal box of the roller nearest to the driving shaft was made vertically adjustable, and a lever was attached to it, by means of which the pinion could be raised and lowered, and thus could be made to mesh alternately with the wheels of the driving shaft. When the driving shaft was continuously revolved in the same direction, and the pinion was raised, by means of the lever, so that it engaged with the upper wheel, the roller was rotated in one direction, and when the pinion was depressed, so that it geared with the lower wheel, the roller was revolved in the opposite direction. Letters patent No. 327,059, issued on September 29, 1885, to Henry C. Barnard, for improvements in washing machines, shows a translation of the rotary motion of a horizontal shaft in one direction into a reciprocating rotary motion of the operating shaft of the washing machine by means of two half-cogged wheels on the driving shaft. These wheels were set on the driving shaft, facing each other, with the pinion of the operating shaft between them. About one-half of each wheel was provided with cogs, and the wheels were so placed on the shaft that the smooth portion of the face of each wheel was opposite the toothed portion of the face of the other. They were placed at such a distance from each other upon the shaft that the cogs on the pinion of the operating shaft between them engaged with the teeth on each wheel as the driving shaft was revolved. Thus, when the driving shaft was rotated continuously in one direction, the pinion first geared with one of the wheels, and was thereby revolved in one direction, until it reached the smooth portion of the face of the wheel, when it became disengaged therefrom and instantly meshed with the other wheel, which rotated it in the opposite direction, until it reached the smooth portion of that wheel, and was disengaged therefrom, and again caused to mesh with the first wheel, when the operation was repeated. The device shown by this patent to Barnard, or some slight modification of it, appears in patent No. 350,222, to Victor Vizet, issued on October 5, 1886, for an improvement in stirring and beating machines; in patent No. 328,262, to William T. Venable, on October 13, 1885, for a new and improved washing machine; in patent No. 444,737, to William Turnbull, on January 13, 1891, for improvements in washing machines; and in patent No. 451,091, to Gabriel Marian Walker, April 28, 1891, for gearing for washing machines. In patent No. 551,915, for an improvement in washing machines, issued to Alexander Webber on December 24, 1895, upon an application filed on August 20, 1894, a very complicated machine is described, in which a sliding sleeve on the operating shaft is made to cause the engagement of the shaft and sleeve alternately with two wheels, provided with beveled gearing and loosely placed upon the shaft, one above and the other below the sleeve. When in operation, these two wheels were driven in opposite directions by the continuous rotation in one direction of a driving wheel, and the slid-

ing sleeve, by means of its vertical movement alternately up and down upon the shaft, was made to operate a clutching device, which fastened the shaft alternately to each wheel, and thereby revolved it first in one direction and then in the other. There are many other patents in the record, which have been carefully examined; but there are none which illustrate the question in issue more clearly than those which have now been reviewed.

It is obvious that there is no substantial difference in the principle or mode of operation of a vertical driving shaft imparting reciprocating motion to a horizontal operating shaft by means of cogwheels fastened upon it, and a horizontal driving shaft imparting reciprocating rotary motion to a vertical operating shaft by means of cogwheels fastened upon the latter. It is plain, from the illustrations to which reference has been made, that the alternate gearing of the shaft, to which the reciprocating rotary motion was to be imparted with two cogged wheels moving in opposite directions, was a common and well-known method of translating continuous into reciprocating rotary motion. "The principle of a machine is properly defined to be its mode of operation, or that peculiar combination of devices which distinguish it from other machines." Burr v. Duryee, 1 Wall. 531, 570, 571, 17 L. Ed. 650. Now, what was the principle of Schroeder's invention? What was the advance in the progress of the art which his combination marked? What was the peculiar combination of devices which distinguished his from all prior machines? It was the combination of the sliding cog-bearing cylinder, by which alone the reciprocating rotary motion was imparted to the operating shaft, with the old and familiar elements of his combination. The history of the prior art has been searched in vain for any device or machine in which a sliding actuating cylinder on the operating shaft, provided with cogs or cogwheels adapted to mesh with those of the driving wheel, is disclosed. The use of such a sliding cylinder to impart motion to the shaft, in combination with the other parts of this machine designated in the first claim of this patent, was new in the art; and the facts that its usefulness is not denied, and that the appellant has seen fit to depart from the many devices open to his use, and to adopt that of the appellee, strongly indicate that it marks a distinct and useful advance in the progress of this art. The appellee was not ignorant of the principle or mode of operation he was seeking to secure when he drew his specification and made his claim. They show that this was the peculiar principle or mode of operation which he described and sought to secure. He said in his specification:

"My invention relates to an improvement in means for operating washing machines, and it consists in a shaft which is revolved continuously in one direction by the operator, combined with an angular revolving shaft, which is made to revolve first in one direction and then in the other, and a vertically moving cylinder placed upon the angular shaft, and which is provided with a double row of teeth or cogs which extend partially around the cylinder, and which mesh with the pinion upon the driving shaft for the purpose of causing the angular shaft to revolve."

And he claimed—

"An operating shaft having a rotary reciprocating motion, a cylinder placed upon the shaft and having a sliding movement thereon, and through which

cylinder motion is alone communicated to the shaft, and a double row of teeth or cogs upon the cylinder, extending at an angle to the shaft, combined with a driving shaft."

It is plain that the cog-bearing, actuating, sliding cylinder was the element of this combination which embodied its principle and distinguished its mode of operation from those which preceded it. This principle has been appropriated by the appellant. He has adopted this new mode of operation. He has placed in his machine this sliding cylinder, by which alone motion is imparted to the operating shaft. He has placed upon that cylinder two rows of cogs, which extend at an angle to the cylinder and mesh with the pinion of the driving shaft. These two rows of teeth are simply the double row of Schroeder separated into two parts and placed facing each other on either side of the pinion of the driving shaft. The two rows of Brammer and the double row of Schroeder perform the same function, operate upon the same principle, and produce the same effect. They mesh with the driving pinion, and by this means revolve the cylinder and its inclosed shaft alternately in opposite directions.

It is contended that the appellant is not guilty of infringement because he does not use the specific means described by Schroeder for the purpose of holding the cogs on his cylinder in mesh with the driving pinion; that he has not imported into his machine the elliptical recess in the cylinder, the extension of the driving shaft beyond the pinion to engage with the flange formed by the recess, the large tooth at each end of Schroeder's double row, the enlarged space in the pinion prepared to receive this tooth, and a number of teeth in his pinion corresponding with the number of teeth on one side of Schroeder's double row. But these are mere details of construction; mere means of union and operation of the elements of the combination, pointed out in the specification as one method of accomplishing this purpose interchangeably with obvious mechanical devices appropriate to reach the same end. They are not substantive constituent elements of the combination described and claimed by the appellee. They are not essential elements of that combination. What Schroeder described and claimed here was the cog-bearing, actuating, sliding cylinder in combination; not the specific form of that cylinder which he described, nor the identical means he pointed out to hold its cogs in mesh with the pinion, but this tooth-bearing, actuating, sliding cylinder in combination with the driving shaft and pinion and the angular operating shaft of the washing machine. He does not describe the form of his cylinder as a part of his invention. He does not claim it as such. He says in his specification, "This cylinder will preferably be made in the form here shown;" and this is to say, in effect, that this is one of the forms in which this essential element of the combination, the tooth-bearing, sliding cylinder, may be made. It is true that the cogs on the cylinder of Brammer are not held in mesh with the pinion by the identical means pointed out by Schroeder; but the use of the means which the latter here pointed out he did not secure or attempt to secure to himself in the first claim of his patent, nor was his right to the use of the combination there claimed restricted to its use by

these identical means. A description in a specification of details which the claim does not make elements of the combination, and which are not essential to it, simply points out one method of using it, and does not restrict the claim to these details. The mechanical devices described by the patentee for holding the teeth of the cylinder in mesh with the pinion were not essential to the combination, because the problem of so holding them in gear was simple, and the state of the art disclosed many devices adequate to accomplish that result.

One who appropriates a new and valuable patented combination cannot escape infringement by uniting or operating those elements by means of appropriate mechanical devices which differ from those which are pointed out for that purpose, but which are not claimed in the patent. Deering v. Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 39 L. Ed. 153; City of Boston v. Allen, 91 Fed. 248, 249, 33 C. C. A. 485, 486. The appellant has used obvious mechanical devices to unite and operate the appellee's combination. They accomplish the same purpose as those described in the patent, and he cannot appropriate to himself this combination and all its elements, and then escape infringement because he unites or operates them by common mechanical devices which differ from, but accomplish the same purpose as, those described in the patent. The combination of the appellant contains the very principle of the appellee's invention; the new mode of operation which he conceived, described, and claimed in his patent; the cog-bearing, sliding cylinder, by which alone motion is imparted to the operating shaft, in combination with the angular shaft, the driving shaft, and its pinion. It contains every element of the patented combination, except the sliding cylinder, in the identical form described in the specification of the appellee, and it contains the mechanical equivalent of the sliding cylinder. While the sliding cylinder of Brammer is not in the same form as that of Schroeder, it is the same thing. It performs the same function and attains the same result, the imparting of reciprocating rotary motion to the shaft, by the same mode of operation, and as this principle and mode of operation were new, so far as is disclosed by this record, in the art to which the patent of Schroeder relates, his cylinder falls within the fair meaning of the term "mechanical equivalent," and it should be applied to the combination in suit.

It is said that the subsequent patent to the appellant raises the presumption that his combination is new, and that it does not infringe that of the appellee; and this proposition may be conceded. Corning v. Burden, 15 How. 252, 271, 14 L. Ed. 683. In this case, however, it is met by a counter proposition of not less weight. It is that where the chancellor has considered conflicting evidence, and made his finding and conclusion thereon, they must be taken to be presumptively correct, and unless an obvious error has intervened in the application of the law, or some serious and important mistake has been made in the consideration of the case, the findings and decree should not be disturbed. The circuit court twice considered this case, and held that the actuating, sliding cylinder of the appellant, by which alone recip-

rocating rotary motion was imparted to the operating shaft, was the mechanical equivalent of the sliding cylinder of Schroeder; that the appellant's combination contained every element of that of the patentee; that it appropriated the principle and mode of operation which distinguished the latter's combination from the devices which had preceded it; and that the appellant must be held to be guilty of infringement. That court supported its findings and decree by able and exhaustive opinions, which are reported in 98 Fed., at pages 880 and 886. A thoughtful consideration of the law applicable to this case and a careful review of the evidence presented in it has failed to convince us that the conclusion of the court below was induced by any error of law or mistake of fact, and it must accordingly be sustained.

In the court below the appellant strenuously contended, and in some parts of the briefs of his counsel he still seems to maintain, that the first claim of Schroeder's patent, which has been under consideration, was void: (1) Because it did not include the mechanical means for holding the gearing of the pinion in mesh with that of the cylinder; that is to say, the flange on the cylinder, the extension of the driving shaft beyond its pinion so as to engage with the flange, the large tooth at the end of the double row, and the enlarged space in the pinion for its reception. (2) Because the extension of the driving shaft beyond the pinion, though clearly shown in the drawings, was not specifically mentioned in the specification. (3) Because, without these or other mechanical devices, the combination would be inoperative. (4) Because some of these devices were secured to the appellee by another claim of his patent, which the appellant does not infringe. This position was not sustained by the circuit court, and since the delivery of its opinion counsel for the appellant seem to retain but little faith in its soundness, since one of their briefs contains this declaration:

"Now, while we do not very seriously contend against the holding of the court that plaintiff's patent is not void for the want of sufficient statutory description, because it would not practically benefit defendant if plaintiff should lose his patent, we do strenuously oppose the reasoning of the court and the application of the liberal construction rule to bring about that end, and at the same time to hold the defendant's patent void."

In other words, the argument in this court is, not so much that this claim is void because it does not include these means of combining the teeth of the cylinder with those of the pinion, as it is that these means are essential elements of the combination, and therefore restrict the claim to a combination operated by these identical devices. The reasons why the latter contention ought not to prevail have already been stated. The former is not more tenable. The drawings were a part of the specification of this patent, both by its terms and by the provisions of the statutes. Rev. St. § 4889. It is true that neither they nor the specification can be read to expand the claim; but the specification and the drawings must be read together, and given their obvious force and meaning, for the purpose of determining what devices are pointed out and described therein. When the specification and drawings of this patent are so read, the extension

of the driving shaft beyond the pinion so that it will engage with the flange on the cylinder, and every other mechanical device requisite to unite the essential elements of the combination claimed, and to make it complete and operative, are plainly pointed out and described. By the first claim of this patent the invention secured by it was not limited or restricted to a combination which included every mechanical device—every detail of construction—described in the specification and drawings; nor was it essential to the validity of that claim that it should include the obvious means of uniting and operating the essential elements of the combination it secured. The purpose of the drawings and specification of a patent is to plainly describe the machine or combination invented, so that one skilled in the art can construct and operate it. The purpose of a claim of a patent is to designate the limits of the machine or combination which the patentee has invented or discovered. A claim for a machine or for a combination of mechanical devices is not insufficient or invalid because it does not include mechanical devices for uniting and operating the elements of the machine or combination which would readily suggest themselves to mechanics skilled in the art, or which are described in the specification and drawings. Loom Co. v. Higgins, 105 U. S. 580, 585, 591, 26 L. Ed. 1177; Deering v. Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 39 L. Ed. 153.

Nor is the first claim of the patent void because it does not include some of the specific devices which are described in the specification and which are secured by the second claim of the patent. A patentee is not required to state in a single claim all that he has described and invented. The first claim of the patent clearly specifies a novel and patentable combination of mechanical elements, which is operative both by the means pointed out in the specification and by obvious mechanical devices appropriate for the purpose of holding its various elements in union; and there was no error in the decree which sustained it. The decree below is affirmed, with costs.