BENBOW—BRAMMER MFG. CO. v. STRAUS et al.

(Circuit Court, S. D. New York. March 23, 1908.)

No. 9,630.

PATENTS—INFRINGEMENT—MEANS FOR OPERATING WASHING MACHINES.

The Schroeder patent, No. 535,465, for means for operating washing machines, the essential feature of which is the means by which, while the horizontal driving shaft is turned continuously in the same direction, it imparts a reciprocal movement to the vertical operating shaft, while an improvement patent, is as to such feature in the nature of a pioneer and entitled to a fairly liberal range of equivalents. Such movement is accomplished by having a cylinder or sleeve mounted on the operating shaft which carries the gears, and which slides upon the shaft, and, by moving up and down in operation, brings the cogwheel of the driving shaft in alternate engagement with sets of cogs or teeth above and below it. The patent *held* infringed by a machine in which the same movement is obtained on the same principle and by substantially the same means; the only difference being that the up and down movement necessary to make the alternate engagements is transferred to the driving shaft by the use of a grooved hub, instead of a sleeve on the operating shaft, and the change being merely colorable.

In Equity. Suit to restrain alleged infringement of United States letters patent, No. 535,465, dated March 12, 1895, to John Schroeder for "means for operating washing machines," application filed October 23, 1894, and for an accounting.

Ralph L. Scott, Taylor E. Brown, and Clarence C. Poole (Philip Mauro, of counsel), for complainant.

C. D. Davis and Charles C. Bulkley, for defendants.

RAY, District Judge. Claim 1 of the patent in suit has been under consideration by the courts many times, and its validity sustained. Schroeder v. Brammer (C. C.) 98 Fed. 880; Brammer v. Schroeder, 106 Fed. 918, 46 C. C. A. 41; Benbow-Brammer Co. v. Simpson (C. C.) 132 Fed. 614; Benbow-Brammer Co. v. Heffron Tanner Co. (C. C.) 144 Fed. 429; Benbow-Brammer Co. v. Richmond Cedar Works (C. C.) 149 Fed. 430; Benbow-Brammer Co. v. Wayne Mfg. Co. (C. C.) 157 Fed. 559. However, its scope, its standing as a pioneer or as a mere improvement, is important in determining whether or not the defendant infringes. In Benbow-Brammer Co. v. Richmond Cedar Works (reported in 149 Fed. 430 on application for preliminary injunction), Judge Kohlsaat, on final hearing, has decided that defendant does not infringe. He arrives at the conclusion that Schroeder's invention resided in the "cylinder mounted upon an operating post and having a vertical sliding movement thereon and also having a double row of teeth or cogs meshing with the teeth of the cog at the end of the driving shaft in such a manner as to secure a reciprocating rotary movement of the cylinder," and which, as he understands claim 1, is the third element of that claim; that the means employed by defendant does not include this cylinder, or an allowable equivalent, giving the Schroeder patent its proper construction in view of the prior art; and that therefore defendant does not infringe. If correct in this interpretation of the claim in suit and

of defendant's device and its operation, his conclusion is, of course, correct.

Claim 1 of the patent in suit reads as follows:

"1. An operating shaft having a rotary reciprocating motion, a cylinder placed upon the shaft, and having a sliding movement thereon, and through which cylinder motion is alone communicated to the shaft, and a double row of teeth or cogs upon the cylinder extending at an angle to the shaft, combined with a driving shaft having means for revolving it attached to one end, and a wheel for engaging the teeth on the cylinder at the other, the driving shaft being driven continuously in one direction, substantially as shown."

The first element is the operating shaft, which is moved for a time in one direction and then for the same length of time in another. In a washing machine, or any other for that matter, whatever is attached to the lower end of this shaft will be carried first in the one direction and then in the other. Hence clothing in a washtub will not be wound about it. This operating shaft properly pivoted could be given this motion by an arm or lever attached to its upper end, and alternately pushed and pulled by the operator. Schroeder, however, sought to impart this reciprocatory motion continuously and uniformly by means of a horizontal driving shaft continuously turned or driven in one direction by means of a crank or handle at one end. It is self-evident that the necessary reciprocating motion of the operating shaft will be produced by cogs on the operating shaft meshing with cogs on the driving shaft, continuously driven or turned in one direction, provided the cogs on the driving shaft so mesh with those on the operating shaft as to move them first in one direction and then in the other. Moving the cogs on the operating shaft, assuming them to be integral therewith, from left to right, carries the shaft and the stirrer in the tub attached thereto in the same direction. So from right to left the same result. Now, if by some arrangement of parts the continuous movement of the cogs on the driving shaft in one direction can be made to so mesh with those on or attached to the operating shaft as to move them first from left to right and then from right to left, the problem is solved. This is what Schroeder set himself to do. It was self-evident that the result sought would be accomplished if the cogs on the driving shaft, it being stationary, but revolving from left to right, should for a time mesh with those on the operating shaft from above and then for the same length of time from below. Where meshing from above, the cogs of the driving shaft moving from left to right would pull those of the operating shaft from right to left and turn that shaft in the same direction, right to left. Where meshing from below, the cogs of the driving shaft moving in the same direction, that is from left to right, would push those of the operating shaft from left to right and move that shaft in the same direction, left to right. It was now necessary to provide some means or construction which would either transfer the cogs of the driving shaft from the upper to the lower side of the cogs of the operating shaft at short intervals, or transfer the cogs of the operating shaft from the upper to the lower side of the cogs of the driving shaft at short intervals.

Hence Schroeder provides means for doing this in the following manner: Upon his operating shaft he places a cylinder or sleeve, the

shaft being so constructed that the cylinder will not turn thereon, which sleeve will slide up and down, this movement being limited. This sleeve has a double row of cogs, upper and lower cogs, extending at an angle to the shaft. If now motion is communicated to those cogs, the cylinder is turned, and the operating shaft with it, and thus through this cylinder motion is communicated to the shaft as it cannot turn thereon. The sole and only purpose of the sliding movement is to give to the cogs on the operating shaft the necessary up and down movement at the proper time; that is, allow them to pass from the upper to the lower side of the cogs on the driving shaft. The shaft itself has no up and down movement, but the part of it (considering the cylinder as a part of it) carrying the cogs does. The driving shaft and cogs thereof have no movement in any direction except to revolve. It is perfectly obvious that, if the cogs of the operating shaft are made integral with it, and it does not move up and down, the same result will be accomplished; that is, the imparting of the reciprocal or reciprocating motion to the operating shaft, by making the driving shaft, or the part of it carrying the cogs which are to mesh with the cogs of the operating shaft, movable up and down so as to allow its cogs to pass from the upper to the lower side of the cogs of the operating shaft. This is exactly what defendants have done in their construction now before the court and alleged to constitute an infringement of the complainant's patent. To do this they have enlarged the operating shaft and grooved it above and below its cogs so as to furnish a road for the inner end of the driving shaft to traverse, and thus effect complete and perfect meshing and the proper transfer of the cogs of the driving shaft from the one side of the cogs of the operating shaft to the other. They have jointed the driving shaft so its inner end carrying the cogs will move up and down in a slit or mortise in the frame, and thus, instead of the cogs on the operating shaft moving up and down at the proper moments of time, each two revolutions of the driving shaft, the cogs on the driving shaft move up and down, or are carried up and down with the pivoted or hinged end thereof. If there is anything patentable in Schroeder's claim 1, in suit, any conception that entitled him to consideration, it has been appropriated in the construction of these defendants. There is, however, quite a difference, several differences, in the means employed for carrying the idea into effect. In Schroeder the cogs of the operating shaft, and carried by it, move up and down with the sleeve or cylinder, which is the means employed for transferring the cogs from the one position to the other without moving the operating shaft up and down. Such a movement of the operating shaft would interfere with and perhaps destroy the effectiveness of the device in a washing machine. In Schroeder, the cogs of the driving shaft have no motion up and down or from side to side, except as they revolve with the shaft. This driving shaft simply revolves. In defendants' device there is no sleeve or cylinder on the operating shaft. The cogs of the operating shaft are, or may be, integral with it. There may or may not be two rows of cogs. No part of the operating shaft moves up and down. But in defendants' device, the driving shaft being jointed and pivoted and

the frame provided with the slit or mortise, a vertical movement of its cogs at the proper time is permitted, and the result is the same as in Schroeder. It is entirely immaterial to the effectiveness of the device which set of cogs has the vertical movement. One or the other must have it. The law of movement is the same in both devices. The mechanical construction differs. That the one is the equivalent of the other cannot be doubted. But in a patented device which belongs to an old art and is for an improvement merely we are to find what the patentee has claimed and described and what is covered by that claim. If his improvement resides in improved means for accomplishing a given result, and he has specifically described and claimed those means, he cannot claim all means for attaining the result. Others may use the old means, or come into the field of improvement and describe and claim and have a patent for different means, if they disclose patentable invention. It has been held that complainant's patent shows, describes, and claims a patentable improvement in means for accomplishing a given result. In this I have concurred heretofore, and that decision was not appealed from. Benbow-Brammer Mfg. Co. v. Heffron Tanner Co. (C. C.) 144 Fed. 429.

In Brammer v. Schroeder, 106 Fed. 918, 46 C. C. A. 41, the Circuit Court of Appeals, Eighth Circuit, affirming the validity of claim 1 of this Schroeder patent, pointed out wherein Schroeder's invention resides, the principle of his invention, and wherein it differs from the prior art. I quote:

"Now, what was the principle of Schroeder's invention? What was the advance in the progress of the art which his combination marked? What was the peculiar combination of devices which distinguished his from all prior machines? It was the combination of the sliding cog-bearing cylinder, by which alone the reciprocating rotary motion was imparted to the operating shaft, with the old and familiar elements of his combination. The history of the prior art has been searched in vain for any device or machine in which a sliding actuating cylinder on the operating shaft, provided with cogs or cog-wheels adapted to mesh with those of the driving wheel, is disclosed. The use of such a sliding cylinder to impart motion to the shaft, in combination with the other parts of this machine designated in the first claim of this patent, was new in the art; and the facts that its usefulness is not denied, and that the appellant has seen fit to depart from the many devices open to his use, and to adopt that of the appellee, strongly indicate that it marks a distinct and useful advance in the progress of this art. * * * It is plain that the cog-bearing, actuating, sliding cylinder was the element of this combination which embodied its principle and distinguished its mode of operation from those which preceded it. This principle has been appropriated by the appellant. He has adopted this new mode of operation. He has placed in his machine this sliding cylinder, by which alone motion is imparted to the operating shaft. He has placed upon that cylinder two rows of cogs, which extend at an angle to the cylinder and mesh with the pinion of the driving shaft. These two rows of teeth are simply the double row of Schroeder separated into two parts and placed facing each other on either side of the pinion of the driving shaft. The two rows of Brammer and the double row of Schroeder perform the same function, operate upon the same principle, and produce the same effect. They mesh with the driving pinion, and by this means revolve the cylinder and its inclosed shaft alternately in opposite directions."

But in those cases the infringing devices differed from the one complained of here. In both the infringing device had a cylinder described in Brammer v. Schroeder, supra, as follows:

"Turning now to the cut of the device of the appellant, the shaft, D, and the pinion, F, on the end of it, constitute the driving force and are continuously revolved in the same direction. The vertical shaft, G, is angular in form above the cover of the washtub, and the spool-shaped sleeve or cylinder, L, is provided with a corresponding opening so that it will slide vertically on the shaft, G, and yet when revolved will rotate the shaft with it. The ends of this cylinder are formed into two beveled wheels with cogs facing each other suitable to engage with the cogs of the pinion, F. Among the teeth upon each of these wheels are three which are higher than those on the remainder of the wheel, the middle one of which, N, is higher and wider than the other two, so that when it strikes the teeth of the pinion it does not insert itself between them, but rides upon them, throws its wheel out of gear with the pinion, and causes the latter to mesh with the opposite wheel. The lower wheel has a flange about three-quarters of the distance around it which by resting upon the lugs, S and T, respectively, supports the cylinder alternately in its higher and lower position as it is operated. The break in this flange and the large teeth upon the two wheels fall in the same vertical line. If the cylinder, L, is in the position shown in the cut, and the shaft, D, is revolved continuously in the same direction, the pinion, F, rotates the cylinder, L, and the shaft, D, within it in one direction until the large tooth, N, in the lower wheel of the cylinder, strikes the pinion. When that tooth strikes upon the cogs of the pinion, it slides the cylinder downward on the shaft, G, disengages the pinion from the lower wheel, and meshes it with the upper wheel, and thus causes the cylinder and the shaft within it to rotate in the opposite direction until the pinion reaches the large tooth in the upper wheel. When that tooth is reached, it strikes on the cogs of the pinion and forces the cylinder upward until the pinion is disengaged from the upper wheel and meshed with the cogs of the lower wheel, when the direction of the cylinder and of the shaft within it is again changed, and thus the continuous revolution of the horizontal driving shaft in one direction produces the reciprocating rotary motion of the vertical shaft by means of the sliding cylinder upon it."

And as to the combination of that infringing device, the court said:

"The combination of the appellant contains the very principle of the appellee's invention, the new mode of operation which he conceived, described, and claimed in his patent, the cog-bearing, sliding cylinder by which alone motion is imparted to the operating shaft in combination with the angular shaft, the driving shaft, and its pinion. It contains every element of the patented combination, except the sliding cylinder, in the identical form described in the specification of the appellee, and it contains the mechanical equivalent of the sliding cylinder. While the sliding cylinder of Brammer is not in the same form as that of Schroeder, it is the same thing. It performs the same function and attains the same result, the imparting of reciprocating rotary motion to the shaft, by the same mode of operation, and, as this principle and mode of operation were new, so far as is disclosed by this record, in the art to which the patent of Schroeder relates, his cylinder falls within the fair meaning of the term 'mechanical equivalent,' and it should be applied to the combination in suit."

In the infringing device here we have something more than the mere interchange of certain operative parts (of different construction, as stated). At the upper end of the operating shaft a hub is fixed thereon. Its only movement is to rotate with the operating shaft. The driving shaft extends inwardly towards this hub so as to enter the groove therein and hereinbefore referred to, and form a guide. This hub has a reversing rack with teeth or cogs to engage with the teeth or cogs of the said driving pinion. The gear connection consists of this guide, the pinion on the driving shaft, and the reversing rack on the hub with its cogs. The substantial difference in the two devices is that, in place of the vertically movable cylinder with cogs, we have the

grooved hub with a reversing rack carrying cogs or teeth (the name is immaterial), which engage the cogs or teeth of the pinion on the floating driving shaft. The substitute for the cylinder, grooved hub, does not float up and down, but the pinion on the driving shaft does.

In Brammer v. Schroeder, supra, the Circuit Court of Appeals said:

"It is obvious that there is no substantial difference in the principle or mode of operation of a horizontal driving shaft imparting reciprocating motion to a vertical operating shaft by means of cogwheels fastened upon it (the driving shaft) and a horizontal driving shaft imparting reciprocating rotary motion to a vertical operating shaft by means of cogwheels fastened upon the latter."

In point of fact, in both constructions, we have: (1) A perpendicular operating shaft with cogs, pins, or teeth attached thereto; the object thereof being to impart a reciprocating rotary motion to the operating shaft. (2) A horizontal driving shaft, with a pinion, having cogs, pins, or teeth at its inner end and means for turning or revolving it, imparting thereto a rotary motion, at its outer end. (3) Means for changing the position of the meshing cogs of the one from the upper to the lower side of those of the other. In both constructions power is imparted at the outer end of the driving shaft. In both constructions the teeth or cogs of the driving shaft mesh with those of the operating shaft, and thereby impart to the operating shaft its rotary motion. In both constructions the reciprocating movement of the operating shaft is imparted by changing the position of the cogs, or pins, or teeth, of the one shaft with reference to those of the other. In the one case this is done by the sliding up and down of a cylinder, carrying the cogs on the operating shaft; and in the other by the sliding up and down of the pivoted arm of the driving shaft carrying its cogs. If there is any substantial difference in principle or mode of operation in the two structures, I fail to see it. If we ask, Is there a difference in construction, the answer is plainly in the affirmative. If Schroeder is limited to a vertically sliding cylinder on the operating shaft, and is not entitled to the doctrine of equivalents, that ends this case. If he is entitled to the benefit of that doctrine, so that the mere substitution of a well-known equivalent for the purpose of changing the position of the cogs or teeth is not permissible without infringing, there being some necessary changes, and modifications of construction in order to effect the substitution, none of which changes are new or show invention, then the defendants infringe, and complainant is entitled to a decree.

The solution is not free from doubt. I have searched the prior art to ascertain if there is substantial foundation for the contention of the defendants that their device is but a use of the combinations of the prior art, or of the elements of the prior art, excluding the essential idea and element of the Schroeder invention. I am not satisfied that this is true. It seems clear to me that Brown's book, 507 Mechanical Movements, there called "mangle movement," does not disclose it. So of Cromwell's book, "A Treatise on Toothed Gearing." I cannot assent to the proposition that this is a patent for a mechanical movement merely. It is granted as one for "means for operating washing machines." And, says the patent:

"My invention relates to an improvement in means for operating washing machines, and it consists in a shaft which is revolved continuously in one direction by the operator, combined with an angular revolving shaft which is made to revolve first in one direction and then in the other, and a vertically moving cylinder placed upon the angular shaft, and which is provided with a double row of teeth or cogs which extend partially around the cylinder, and which mesh with the pinion upon the driving shaft for the purpose of causing the angular shaft to revolve, all of which will be more fully described hereafter."

The floating shaft of defendants' device would be unavailing to effect the change of position of the cogs of its pinion, were it not for the peculiar form and construction of this "hub" on the operating shaft, and which "hub" I have referred to as an enlargement of the operating shaft. The pinion, or cogs of the floating driving shaft, is kept in proper engagement with the cogs of the reversing rack on the hub by means of the projection or extension of the driving shaft beyond its pinion, and while, through the cogs of this pinion, motion is communicated to the cogs of the reversing rack, and to the hub and through it to the operating shaft, still there would be no proper or effective vertical or up and down movement of the pinion of the driving shaft, but for the groove in the hub extending at an angle to the shaft on which it is mounted. The groove in the hub and its reversing rack and cogs take the place of the double row of cogs upon the cylinder extending at an angle to the operating shaft. I think the hub, with its groove and rack, is the equivalent of the cylinder and its cogs in every respect but one. It does not have a vertical sliding movement on the operating shaft, but this is not necessary, as the hinged or pivoted driving shaft and its cogs do. However, this vertical movement of the cogs of the driving shaft is imparted wholly by the hub and its peculiar construction. In every essential, therefore, the hub takes the place of the cylinder; vertical movement being permitted to the pinion on the driving shaft. In short, in defendants' device a nonsliding cylinder is substituted for the sliding cylinder of the Schroeder patent; necessary changes being made in other details. The history and construction of the various infringing devices disclosed in the cases that have been before the court, including the alleged infringing device in question here, show great ingenuity in efforts to avoid infringement of the Schroeder patent. Have defendants secured a noninfringing device? It is perfectly clear they have not gone back to the prior art and taken an old combination, or a combination of old elements. If they avoid infringement, it is by the use of a new combination including some new element or elements of construction, some new means not covered by the Schroeder patent because of its self-imposed limitations. I think this last question is reduced to the single proposition: Do the words "and having a sliding movement thereon" limit complainant to a construction where the operating shaft actually has a cylinder thereon, and which cylinder actually has a sliding movement on such shaft? If so, defendants do not infringe. But, if Schroeder is entitled to a construction of his claim, as to this particular element—the operating shaft—which will cover an equivalent for the sliding cylinder, then defendants do infringe.

The books show many cases which will sustain either contention. Schroeder is an improver, but in his improvement here he brought in

a new element not found in the prior art. Here was the essence, the very heart, of his invention. As to that particular thing, he was something of a pioneer. Is he not entitled to a construction and a range of equivalents accordingly? I think he is, and that the object and purpose of the patent law would be defeated by limiting him in such an invention to the precise details mentioned by him. If his invention were a mere new combination of old elements, I might think differently. The infringing device used and sold by defendants is a change of construction, form mainly, and a transposition of movements in part from one place to another, and a substitution of one well-known element for another, such as the substitution of the floating driving shaft for the stationary driving shaft, and which supplies the necessary vertical movement of one set of cogs; and thereby does away with the necessity of a vertically sliding cylinder. But in effect a cylinder, "the hub," is retained which answers every purpose of the one described by Schroeder; the floating shaft being substituted in the combination. The operative law remains and controls. The principle is the same. The result is the same: It is attained in substantially the same way by substantially the same means, and I think infringement of a meritorious invention is established.

On the other hand, it can be said with some force: That this is a crowded art. That the field for improvement was open to all comers. That Schroeder is an improver merely, and assumes to be nothing more. That in his specifications he repeatedly mentions and describes a vertically sliding cylinder placed upon the angular shaft, the operating shaft, and sums up by saying:

"As will be seen, the parts consist of only the driving shaft provided with a wheel and the operating shaft, B, provided with the vertically moving toothed cylinder, I."

That then follows his claim in which he specifically claims: (1) An operating shaft having a rotary reciprocating motion; (2) a cylinder placed upon the shaft and having a sliding movement thereon, and through which cylinder motion is alone communicated to the shaft, and a double row of teeth or cogs upon the cylinder extending at an angle to the shaft; and, lastly, the driving shaft.

It can be claimed with some force that any combination which dispenses with the vertical movement of the cylinder is not an infringement, even if its office or function—that is, the office of such vertical movement—is performed and accomplished by the substitution, not of a new element in the combination, or of an equivalent additional element, but by the substitution of an allowable equivalent for the driving shaft, viz., a floating driving shaft. No one can contend for a moment that infringement would be avoided by substituting in the Schroeder construction the floating shaft for the fixed driving shaft shown. Assume that Schroeder has the floating shaft, but no slot in his frame, then what have defendants done to avoid infringement? This, simply, they have slotted the frame so as to permit a vertical movement of the driving shaft; they have so fixed the cylinder to the operating shaft as to deprive it of its vertical motion, and then have grooved it diagonally and substituted one row of cogs for two, an immaterial

change. They have then transferred the vertical movement from the one set of meshing cogs to the other with minor changes of construction, which are incidental to the change, but which are well known and involve only ordinary mechanical skill.

The defendants have adopted the method of the claim of Schroeder's patent. They have not been able to dispense with either of its elements, but they have changed the form of one of them and transferred the vertical movement of another to a third. I do not think that Schroeder's invention, so construed as to include defendants' construction, makes it broader than the terms of the claim permit. Retaining the cylinder, "hub," through which, in defendants' device, motion is alone communicated to the shaft, with teeth or cogs extending at an angle to the shaft, they combine it with a driving shaft having means for revolving it attached to one end, and a wheel for engaging the teeth or cogs on the cylinder, "hub," at the other; the driving shaft being driven continuously in one direction. The sliding movements of the cylinder, "hub," have nothing whatever to do with communicating motion to the operating shaft. That is done by the meshing of the cogs of the pinion on the driving shaft with those on the cylinder, or "hub," irrespective of any vertical movement. In defendants' device, the hub is attached at the upper end of the operating shaft, and through it motion is alone communicated to that shaft. That is the main and central idea of the claim as to the cylinder, and is so expressed. The sliding movement of the one set of cogs or of the other was and is necessary to give the necessary planetary motion, as it has been termed, and it was and is immaterial which set has this vertical movement. That movement in the cylinder is not an essential to the invention of Schroeder. Changing that movement from the one set of cogs to the other in this mechanical movement and operation of the combination does not change the principle or mode of operation of the combination, or avoid infringement, for the entire conception and principle and mode of operation of Schroeder are necessarily retained in the infringing device and used by defendants to accomplish the same result.

In Wagner T. Co. v. Wyckoff, S. & B., 151 Fed. 585, 81 C. C. A. 129, Coxe, C. J., said:

"Courts look with favor upon patents for primary improvements which are novel and a manifest departure from the principles of prior structures, and which constitute the final step necessary to convert failure into success. * * * A strict construction of the claims of a patent should not be resorted to, if the result would be a limitation on the actual invention, unless it is required by the language of the claim. * * * Infringement is not avoided by changes in a patented machine which are nonessential, as by changing the positions of parts or transferring a function from one part to another, without affecting the principle or mode of operation."

This last clause quoted is specially pertinent here, as all the defendants have done is to make nonessential changes and transfer the function of the sliding movement of the cylinder to the floating driving shaft, where it accomplishes the same precise purpose in the combination. I do not think the central idea of Schroeder was to have his cylinder slide, to give it a vertical movement, but to have it carry the cogs, and, through it solely, to impart a rotary motion to the operating

shaft. That function is performed by the hub of defendants' device, but to the floating driving shaft has been transferred the work of giving the up and down movement to one set of cogs. Schroeder is presumed to have known of that old element, but he did not need to mention it as an alternative. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935.

While, as stated, I am not free from doubt, on the whole there should be a decree for the complainant.

I again quote from Judge Coxe in Wagner, etc., v. Wyckoff, etc., 151 Fed. 591, 81 C. C. A. 129, as follows:

"That the claims of the first patent are entitled to the broadest range of equivalents cannot be successfully maintained, but we think they are entitled to liberal interpretation and cannot be evaded by one who uses the elements of the combination, or equivalents therefor, which a mechanic of ordinary intelligence would have wit enough to adopt if asked to substitute for the rods, lugs, and keys of the patent other elements to which, though differing markedly in appearance, accomplish the same result in substantially the same way. The claim should be as broad as the invention."

And again from International Time R. Co. v. Dey et al., 142 Fed. 736, 744, 745, 74 C. C. A. 68, 76, 77:

"In short, the infringing devices have appropriated every element of the patented combination; the differences being of form, and not of substance. These consist of mechanical changes and the substitution of obvious equivalents well known to every skilled workman. Identity of detail in a combination, like the one under consideration, is not necessary in order to constitute infringement. The patentee took pains to point out that 'the specific construction of the mechanism shown * * * is not essential.' This was an unnecessary precaution. The law gave him ample protection in this regard. Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935."

There will be a decree accordingly, with costs.