### WILFLEY v. DENVER ENGINEERING WORKS CO. et al.

(Circuit Court, D. Colorado. November 5, 1901.)

#### No. 3,927.

1. PATENTS—INVENTION—NEW COMBINATION OF OLD ELEMENTS.

A combination of old elements, to render them adaptable to a new use, may involve invention, and sustain a patent, where the combination possesses utility, and produces a new and useful result in the art to which it is applied, and was not obvious to one skilled in such art.

2. SAME—INFRINGEMENT—ORE CONCENTRATION TABLES.

The Wilfley patent, No. 590,675, for an improvement in ore concentrators, discloses invention, and is valid, and entitled to a liberal construction. Claims 1, 2, and 7, covering a concentrating table, construed, and *held* infringed.

In Equity. Suit for infringement of patent. On final hearing.

George L. Hodges, for complainant.

Cranston, Pitkin & Moore (Harold Binning, of counsel), for respondents.

RINER, District Judge. The bill in this case is founded on letters patent granted to the plaintiff on the 28th day of September, 1897, for "certain new and useful improvements in ore concentra-

tion." It is alleged in the bill that the defendants have been and are causing to be manufactured, advertised and offered for sale and use, and have sold for use, and have used, and threaten still further to advertise, to offer for sale, and use, and to sell and use, a concentrating table described in the bill as the "Cammet Concentrating Table" or "Cammet Concentrator," which it is alleged, in its construction and in its intended operation, comes clearly within the terms of claims numbered 1, 2, and 7 of plaintiff's patent, as follows:

"(1) A transversely inclined concentrating table, having a movement whose tendency is to carry the material longitudinally forward towards the tail or foot of the table, said table being provided with a number of riffles extending longitudinally a portion of the distance from its head towards its foot, said riffles varying in length for the purpose specified, the table having a smooth, plain, or unriffled portion extending from the extremities of the riffles towards the tail of the table, whereby the material as it leaves the riffles is subjected to the action of the water on the smooth portion of the table, and the final separation of the mineral from the gangue effected.

"(2) A transversely inclined concentrating table having a number of longitudinal riffles extending a portion of the table's length from the head towards the foot, said riffles being of unequal length, the uppermost being the shortest, while the other riffles increase in length from the upper edge to the lower edge of the table; the table having a plain or unriffled portion lying at the extremities of the riffles, and adapted to receive the material caught by the riffles."

"(7) The combination of a transversely inclined concentrating table having a series of riffles extending longitudinally from the head towards the tail of the table, said riffles being of unequal length, the uppermost being the shortest, and the riffles increasing in length from the upper to the lower edge of the table, the table being provided with a plain or unriffled portion of suitable area located at the extremities of the riffles, means for feeding the material to the upper portion of the table's head, means for discharging water on the upper edge of the table, and suitable means for imparting to the table a longitudinally reciprocating movement of a character adapted to move the material from the head towards the tail of the table."

The defendants deny the patentable novelty of Wilfley's claims, and deny that their acts constitute infringement, as alleged in the bill. As stated in the brief filed by the respondents on July 19, 1901, two main issues arise:

First. "Can the combination claims 1, 2, and 7 of the Wilfley patent in suit be construed and interpreted by the court to cover an invention new and patentable at that time?"

Second. "Supposing that claims 1, 2, and 7 of the Wilfley patent be held to cover patentable subject-matter, then do or do not the respondents' tables, as manufactured by the Denver Engineering Works Company, fairly come within the monopoly of the complainant?"

I think the first question must be answered in the affirmative. Even if it be established that the arrangement of the table is merely the application of an old article to a new use, it does not follow that the patent is necessarily void. If we concede that the riffle was old, and that the smooth surface of the table was old, it by no means follows that the application, in the manner shown in the claims set forth, of the riffles to the smooth surface, substantially as described in the patent, is merely applying the riffles to a new use, in the sense in which, in the law of patents, the mere application of an old article to a new use is held not to be the subject of a patent.

While it may be said, using an old and familiar illustration, that using an umbrella to ward off the rays of the sun, it having been before used to keep off the rain, would be merely the application of an old article to a new use, and therefore not patentable, yet to apply such a principle to avoid the claims of the patent in suit would render void the mass of patents that are now granted. There is scarcely a patent granted that does not involve the application of an old thing to a new use, and does not, in one sense, fail to involve anything more. But the merit consists in being the first to make the application, and the first to show how it can be made, and the first to show that there is utility in making it. While it is difficult in many cases to determine where skill ends and invention begins, I think it perfectly clear, from the evidence, that here a new and useful result was accomplished in the matter of ore concentration, which cannot be said to have been perfectly obvious. The prior art discloses no combination of the elements of the Wilfley patent in the way which he describes. The minds of inventors and those interested in the art had been specifically directed to the question of the separation of the values from the gangue, for many years prior to the Wilfley patent, yet neither the defendants nor any one else conceived the idea that this result could be best accomplished by subjecting the pulp upon the table to the repeated interference of the riffles placed upon the table in the manner described in the patent, and at the same time and in the same manner protect the values lower down on the table from the cross wash of the water laden with the waste from the riffles higher up. This arrangement was new, and, as the testimony clearly establishes, useful and valuable.

He solved a problem in ore concentration that had never before been answered, by adjusting riffles, of unequal length, one in advance of the other, the shorter being at the top, so that they not only protect the mineral deposited at the head end of the table, but offer a succession of riffles to the cross flow of the gangue and values which wash down from the riffles above, and thereby saves the values which, coming from the top of the table, would otherwise be washed across the table. When the discovery was made and explained to the public, it could readily be seen by other inventive and mechanical minds that the means whereby the result was produced were very simple and plain, and it became apparent to him, as it now is to others, that the same results could be brought about by various changes that might be made in the construction of riffles; hence he said in his specifications, "I do not limit the invention to any special construction of riffle."

After a most careful study of the question, I am unable to adopt the suggestion of counsel for the respondents, that the plaintiff should be limited or narrowed down to the rights of a mere improver of an old machine. While the courts have no right to enlarge a patent beyond the scope of its claims as allowed by the patent office, yet patents should be construed liberally, in accordance with the design of the patent laws, to promote the progress of the useful arts, and allow inventors to retain for their own use not anything which is matter of common right, but what they themselves have created.

Considering the result, I think, if any doubts exist as to the fact of invention, they should be resolved in favor of the patent.

In the Wilfley table the raised ribs or riffles at the head end, from which the material is passing suspended in the water, cause a violent disturbance in the current, and, to use the language of some of the witnesses, "in the quiet eddy" caused thereby the material is given an opportunity to settle out of the water upon the table. This material is protected by the riffles, and is stratified and carried forward by the force of the end motion of the table. When the material is carried forward to or near the end of the riffles, most of the heaviest mineral is stratified at the bottom, and the lighter stratum of pure gangue is washed over. The middle strata are then subjected to the side wash of the water, the lower stratum coming across the table in a line, straight or oblique, depending upon adjustment, and, the middle strata going forward and downward, the values are caught by the riffles below, which, because of their arrangement, offer an obstruction to the current, and allow the values to settle in with the other values there stratified, and, protecting them, carry the lower strata to a place of safety. This operation is repeated by each advancing riffle.

The distinctive arrangement of the riffles upon this table has nothing to do with the strata which lies at the bottom of the head end channels, and which find their way across the table to the tailings box. The primary function of the table, as shown by the evidence, is that which concerns the middle strata, which are treated by the interposing of riffles under the surface adapted to receive the mineral, and sufficiently "smooth, plain, or unriffled" for the purpose set forth, in such a way that the values are caught and restratified, and directed again to the tail of the table.

Upon the withdrawal of the protection of the elevated riffles, the relative resistance of the specific gravities of the various strata cause them to take different positions in diagonal bands in the same order as that in which they were superposed. The heavier specific gravities, with the greatest resistance at the top, serve, in a measure, to exaggerate the retarding action which occurs on the linoleum surface, and exercise a protecting influence over the minor or more sensitive particles of the material below, and it is the taking advantage of this diagonal arrangement, by the adjustment of the riffles with reference thereto, that is new and valuable in the plaintiff's patent.

The riffles at the head end of the Cammet table, as in the Wilfley, precipitate the values, and, stratifying them, protect them to the zone of separation. The two tables, in their construction and arrangement, so far as the raised ribs or riffles are concerned, are substantially, if not exactly, the same. About the only difference is that, in the Cammet table, the raised ribs are widened where they taper down to the smoother portion of the table, but, as in the Wilfley table, they are of unequal length, terminating on a diagonal line, the uppermost being the shortest, and increasing in length from the upper to the lower edge of the table. The reason for this arrangement (first disclosed and taken advantage of by the plaintiff) in both

tables is, I think, in view of the prior state of the art, entirely clear. The purpose is to secure the stratification of the material in the channels at the head end of the table, the advancement of the imbedded strata to the ends of the elevated riffles, the subjection to the side wash of the water when the protection of the riffles is withdrawn, whereby the upper and lighter strata, and, with them, particles of greater specific gravity, held temporarily in the mass, are washed down to the extending wall of the next riffle below, where a new stratification of that material, by arrangement in its proper relation as to specific gravity, takes place. At the end of the riffle the material is again subjected to the side wash of the water, and so on down the path of travel along the terminals of the elevated riffles, and from riffle to riffle, until it reaches the lower left-hand corner of the table; the repeated stratification along the ends, and slightly in advance of the elevated riffles or ribs at the head end of the table, being the necessary prearrangement of the material which the repeated washings make effective in concentration by the removal of the superposed stratum of gangue or waste.

The feature of the Wilfley invention covered by his patent is the arrangement of the terminals of the riffles so as to take advantage of a diagonal arrangement of materials on the table's surface in bands, in the order of their specific gravities, and to produce the repeated washings in the passage thereof from riffle to riffle.

Do the shallow grooves in the defendant's table, extending from the ends of the raised ribs or riffles to the end of the table, and through that portion of the table designated in the Wilfley patent as "plain, smooth, or unriffled," perform any other or different function? After a most careful study of this record, I have reached the conclusion that they do not. There is no doubt that the modification of the surface, in the operation of the Cammet table, tends to a great extent to guide the concentrates so as to distribute them across the entire end of the table, while the linoleum surface of the Wilfley table delivers them into the concentrates box lower down the table. But the surface over which the material is washed is the smooth broadened portion of the elevated riffles or ribs, forming the table's surface, and the bottom of the next groove or grooves, or, when the grooves are filled with material, which must necessarily be the case after the first few moments of operation, then over the material running therein, thus giving it ample opportunity to spread and be rewashed. This I think the evidence shows is the function performed by the Wilfley table.

The improvement in the Cammet over the Wilfley table, if it is an improvement, consists in directing and delivering, by means of the grooves in that portion of the table designated as plain, smooth, or unriffled in the Wilfley patent, the concentrates into the receptacle provided therefor. It may be that the Cammet tables are an improvement upon the invention covered by the Wilfley patent in this respect, but it still has all the essential elements of the best form of Wilfley's invention. It performs the same function in substantially the same way, and therefore must be held to infringe it.

Let a decree be entered for complainant in accordance with the prayer of the bill.