AMERICAN STEEL FOUNDRIES et al. v. WOLFF TRUCK
FRAME CO.

(Circuit Court, N. D. Illinois, N. D. April 25, 1911.)

No. 29,185.

1. PATENTS (§ 109*)—AMENDMENT OF APPLICATION—VERIFICATION.

An amendment to an application for a patent merely adding new claims which do not involve a departure from the original invention as described and shown in the specification and drawings is within the applicant's right and need not be verified.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 152; Dec. Dig. § 109.*

Amendment of application for patent, see note to Cleveland Foundry Co. v. Detroit Vapor S. Co., 68 C. C. A. 239.]

2. PATENTS (§ 167*)—SPECIFICATION—EFFECT OF REFERENCE TO DRAWINGS.

Where an opening in a mechanical device, as shown in the drawings filed as part of an application for a patent, was of peculiar form, and such opening was described in the specification by reference to the drawings and the letter by which it was designated thereon, the peculiar form was thereby incorporated in the specification although not otherwise mentioned therein.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—CAR TRUCK.

The Hardie patent, No. 569,044, for a metallic car truck, construed and held to disclose patentable novelty and invention. Also held infringed by a modified form of the device of the Harrington patent, No. 857,937.

In Equity. Suit by the American Steel Foundries and J. S. Andrews Company against the Wolff Truck Frame Company. Decree for complainants.

Linthicum, Belt & Fuller (Charles C. Linthicum, of counsel), for complainants.

Sheridan, Wilkinson, Scott & Richmond, for defendant.

KOHLSAAT, Circuit Judge. This cause is now before the court on final hearing. The bill charges infringement of claims 2, 3, and 6 of patent No. 569,044, granted to J. S. Hardie on October 6, 1896, for a metallic car truck. The claims in suit read as follows, viz.:

"2. A car-truck, comprising two truck-arches rigidly connected with each other, each truck-arch having a transverse opening, the upper portion of which is contracted, a truck-bolster fitted in the upper portion of said openings, and springs seated in the openings and below the truck-bolster and respectively bearing against the truck-bolster, substantially as described.

"3. A truck having two truck-arches, each formed with an opening, the upper portion of which is contracted, a truck-bolster having its ends respectively fitted within the upper portions of said openings, and means within the openings and below the truck-bolster by which the truck-bolster is held in place, substantially as described."

"6. A truck having a truck-arch formed with an opening, the central portion of which is enlarged over the terminals, a spring-seat fitted within the contracted lower portion of the opening, springs rested on the spring-seat, and a truck-bolster fitted within the upper contracted portion of the opening and engaged by the springs, substantially as described."

The invention here involved consists in a combination truck having, as an essential element, a transverse opening in each truck-arch or side frame of such a form as enables its use with all kinds of bolsters. This is the only structural novelty here relied on. The new feature of this opening is found in the contracted upper portion, or, as stated in claim 6 in the enlarged central portion thereof, whereby a bolster constructed with column guides, integral or otherwise, upon its opposite sides may be passed through the enlarged portion of the opening in the side frame of a one-piece side frame, and then be raised into and maintained in contact with the sides of the contracted upper portion of the opening in the arch or side frame, so as to resist any substantial backward and forward movement of the bolster, and make a comparatively rigid connection between the two side frames. The advantage claimed for the device is that it provides a simple and durable construction which is not liable to get out of order; one which is readily set up without the aid of skilled labor, and one which may be conveniently inspected and repaired, and which is adapted to use with any bolster. The enlarged opening, however, would seem to be of value only in connection with bolsters equipped with column guides or lips. The defenses are lack of patentable novelty, noncompliance with the statute as to what the invention consists in, and want of infringement.

The application upon which the patent in suit was granted was filed January 25, 1896. Of the four original claims asked for, none claimed the contracted upper part or the enlarged central portion. Original claims 1, 2, and 4 were rejected. Original claim 3, which covered principally the means for placing and holding the bolster in the contracted upper part, was allowed. Thereupon Hardie canceled original claims 1, 2, and 4, and added claims 2 to 9, inclusive, among which appear the claims in suit. Now for the first time appears a claim for the contracted upper end and the enlarged central portion of the opening. No new specification or drawings were filed, nor was the change in the claims sworn to. The drawings disclosed the contracted upper portion, and the enlarged central portion of the opening, but no reference is made thereto in the specification.

[1] Upon this state of facts defendant moves to have the claims in suit declared invalid for want of verification of the amendment. In Hoe v. Kohler (C. C.) 25 Fed. 271, decided in 1885, Justice Blatchford, sitting in the Circuit Court for the Southern district of New York, held that the mere failure of the file wrapper and contents to disclose whether the application was properly verified or not was not sufficient to rebut the presumption that the commissioner required and received a proper preliminary oath. To the same effect is Earl v. Rochester S. & E. R. Co. (C. C.) 157 Fed. 241. Defendant cites Steward v. American Lava Company, 215 U. S. 161, 30 Sup. Ct. 46, 54 L. Ed. 139, affirming Lava Company v. Steward, 155 Fed. 731, 84 C. C. A. 157, in support of its contention. In that case the fact of failure to make the required oath was conceded, as appears from the opinion. Here, it is not conceded, nor is there any attempt to prove it. Mr. Justice Holmes, speaking of the oath on page 168 of 215 U. S., on page 50 of 30 Sup. Ct. (54 L. Ed. 139) says:

" \* \* \* The amendment required an oath that Dolan might have found it difficult to take, and for want of it the patent is void."

It is evident there could be no presumption as to the oath under such circumstances. It will be borne in mind that the statute does not in terms require the oath to be in writing or recorded. Walker on Patents (4th Ed.) § 122.

[2] But it is not deemed necessary to dispose of this contention upon this ground. Hardie made no amendment to either the specification or drawings. The latter, as above stated, disclosed the opening with a contracted upper part and an enlarged central part. The specification makes no mention of it. In Western Electric Company v. Sperry Electric Company et al., 58 Fed. 187–196, 7 C. C. A. 164, 173, Judge Woods, speaking for the Court of Appeals for this circuit, and with reference to an amendment to the application says:

"At first Scribner, it is clear, believed the up-and-down compensating movement of the armature in the main circuit, irrespective of the action of the regulating magnet, to be an important feature of his lamp; but before the patent issued, without changing the drawing or modifying the structure of his device in the least, he presented an amended specification, in which he repudiated that idea, and described the armature in operation as assuming and holding a definite relation to the magnet. So long as he did not change the structure of his device or invention, he had the right to change the specification. \* \* \*"

This latter expression is quoted approvingly in Michigan Central R. R. Co. v. Consolidated Car Heating Company, 67 Fed. 128, 14 C. C. A. 232, decided by the Court of Appeals for the Sixth circuit. In the same case sections 561 and 635 of Robinson on Patents are cited to the effect that "new matter is that which is not found in the specification, drawings, or model as first filed, and which involves a departure from the original invention" and proceeds to give weight to the drawings. In Hogg et al. v. Emerson, 6 How. 484, 12 L. Ed. 505, the court says the models and drawings are proper to be resorted to for clearer information. To the same effect is Brooks et al. v. Fisk et al., 15 How. 212, 14 L. Ed. 665. In Tinker v. Wilber Eureka M. & R. Mfg. Co. (C. C.) 1 Fed. 139, Judge Wheeler, in the Circuit Court for the Southern district of New York, states that the drawings "could and should be looked at, if necessary, in order to explain an ambiguous or doubtful specification, and to make the invention capable of being understood and used. But it cannot supply an entire want of any part of a specification or claim in a suit upon a patent, although it might afford ground for a reissue covering the part shown by it." Judge Blodgett in Frazer v. Gates & Scoville Iron Works (C. C.) 22 Fed. 442, adheres to the rule that models and drawings are not to be resorted to for the purpose of construing the patent except in cases where the specification is ambiguous or uncertain. It is said by Judge Shipman in Gunn, Tr., et al. v. Savage et al., 30 Fed. 369:

"A description which is said to be vague and uncertain may be made clear by the drawings. An imperfect written description will be aided by correct drawings, but when the written description is not only silent in regard to a feature of the invention, but places the novelty upon a different and described feature, the drawings will not help an entire omission, because the necessity of a written description is made absolute by the statute.

Doubtful or ambiguous specifications can be aided and made plain by drawings, but they cannot supply an entire absence of description in the specification. Again, the drawings will not aid the nondescription, because, although they may show to an expert the new feature, they do not show that the patentee claimed to be the inventor of that part of the die, when in his specification he had distinctly placed his invention upon another part."

Sections 4884 and 4889 of the statutes (U. S. Comp. St. 1901, pp. 3381, 3383) provide that the drawings shall be a part of the specification and of the patent. The specification refers to the transverse openings A' of the drawings and the transverse flanges thereof A2 and speaks of the reduced bolster ends b' being guided in the upper portions of the openings A'. There can be no doubt but that the specification, including the references to the drawing, amply describes the openings with contracted upper portions and enlarged central portions for the purposes of amending the claims. Under such a state of facts Hardie was at liberty to amend his claims to cover the peculiar form of transverse openings shown in the drawings, even though no reference is made in the specification to their peculiar form and its advantages. It is a well-established rule of law that a patentee is entitled to all the benefits of his invention. The amendment was fully justified by the description including the drawings, and was therefore not such a departure from the original application as would require a new verification. The claims in suit are very explicit as to the openings. Taking the whole patent—claims, specification, and drawings—into consideration, under the authorities, some of which are cited supra, the objections raised by defendant as to the amendment are not well taken.

[3] As above stated, the claims and the specification taken in connection with the drawings show the side arches or frames held together by a bolster which makes no use of the enlarged central portion of the opening. It has no column guides, bolster end lips, or other features which required an opening wide enough to permit the bolster end side guides and all to be inserted therethrough, and an upper part so narrowed as to engage the sides or any other part thereof. The patent is very inartificially drawn. The defendant insists that the use of the openings, with bolsters having column guides, is nowhere suggested. The Patent Office seems to have been of the opinion that no such use was contemplated, since a patent specifically covering the column guide and contracted upper part of the opening was granted to W. P. Bettendorf on October 6, 1903, numbered 740,617. It is complainant's contention that the patent disclosed an opening which could be used with any bolster, else why the contracted upper portion or enlarged central portion? On the other hand, defendant insists that the contracted upper part means vertical contraction so as to engage the shoulder shown at the ends of the bolster in the drawings. This latter position has not the merit of being reasonable, especially so since the drawings disclose the laterally contracted upper part. Defendant explains the enlarged central portion of the opening as desirable for insertion of the spring seat—a use to which it is doubtless put. But this minor advantage would hardly account for the large modification of the open-

ing shown in the drawings, although an enlarged opening is made an element for that purpose in the Barber patent, No. 620,092. Complainant disclaims any intention to have an opening so large as to permit the withdrawal of the whole bolster therethrough. On the other hand it is not clear that there is any advantage in producing an opening which would accommodate every kind of bolster. The only feature of the patent in suit which suggests the use of a bolster having column or side guides are those recited in the claims, and the representation in the drawings of a contracted upper part and an enlarged central part. The specification as well as certain claims not in suit call for compression wedges under the spring seats. Their application to the bolster is not disclosed though presumably they were intended to tighten or raise and hold something in position. The patentee in his testimony says they were designed to force the side or column guides into contact with the contracted upper portion.

In its commercial device, complainant does not seem to use the compression wedge. Hardie testifies that his original drawings showed a bolster having column guides as in the Schaffer bolster and that the change to the bolster shown in the patent in suit must have been made by his solicitors and that it was his intention to provide for column guides. Two photographs taken before the patent was granted show Hardie's truck assembled with a Schaffer bolster. The record makes plausible Hardie's contention that he had the Schaffer bolster in mind in providing the form of his side frame opening. The question therefore is whether his device shown in the drawings to be assembled with a bolster having no column guides, is so misleading or meaningless as to fail to disclose his alleged invention to those skilled in the art in accordance with the statutory requirement. It is a well-known canon of patent construction that patents shall be liberally construed in order to give effect to the invention, if invention may be fairly deduced from what is disclosed. At the time of the filing of the application by Hardie bolsters with column guides or lips were well known. Hardie shows a method whereby such bolsters may be used in connection with cast one-piece side-frames or arches, and as well in connection with bolsters not provided with column guides. This appears from the evidence and from an inspection of the drawings, but is not claimed.

It must be remembered that the claims call for a truck, and not merely for the seating of a bolster end. Given the Hardie opening in the side arch, would not the substitution of the Schaffer bolster for that of the drawing, amount to the use of an equivalent; and is not the substitution plainly suggested by the form of Hardie's opening? It seems fair to hold that it was made to catch and appropriate the whole bolster family. It is therefore held that complainant is not limited by the drawings of the patent in suit, to a combination employing a bolster having no column guides, and that the use of the Schaffer bolster in the assembling of the Hardie truck comes within the terms of the patent. This being so, are the claims in suit valid?

Hardie was not a pioneer in the construction of one-piece side-frames made of metal and having transverse openings available for

the reception of springs, spring seats and bolster-end bearings. Goltra patent No. 552,493, granted December 31, 1895, Hughes patent No. 408,022, granted July 30, 1889, and the Fox patent No. 521,709 disclose it. The opening in the side-frame having a large and a narrow portion, so that the axle may pass through the larger opening and then be crowded by means of a tongue and groove arrangement into locked contact with the sides of the contracted part of the opening, is shown in Sanford patent for an adjustable car-truck, No. 105,984, granted August 2, 1870. Wyatt and Smedley patent, No. 223,207, shows the enlarged central portion and contracted upper portion of a transverse opening between side columns in truss or diamond variety of arch-bar side-frames. The openings are substantially like those of the patent in suit, except that they are obstructed by supporting bolts, and are evidently not intended for the insertion of any kind of a bolster. They would be suitable for the reception and locking of bolster ends having integral column guides should the bolts be moved out of the way. As with the patent in suit, so in the latter device, the patent does not show a bolster requiring the peculiar form of the openings nor any use to which it might be put. Its swinging bolster would doubtless not be one of the bolsters to which complainant alludes when it says the Hardie opening is adapted to be used with all bolsters, although it would not interfere. Could not the Wyatt & Smedley opening be so adjusted as to be used with any bolster without patentable modification?

The Geisendorff patent, No. 20,871, granted July 13, 1858, for a car axle shows a journal box device acting essentially upon the principle of Hardie's device. The journal-box operates upon the same principle as does the opening in the Hardie side-arch, except that the bearing of the box is upward. The journal-box has ears or lips which serve as jaw-guides, corresponding to the column guides of the claims in suit, which pass into locking relation with the jaw-slots. The box can be removed by forcing the guides to register with the corresponding openings or recesses in the inner faces of the pedestal jaws. This also is found in patent No. 20,535, granted to W. O. Arnett June 15, 1858. This patent covers an improvement for disconnecting car axlebox cases without removing the stay-bar or elevating the car. The front flanges of the pedestal jaws are cut away at their lower part to make an opening large enough for the insertion of the lugs upon the box case. They are then lifted to lip and groove contact with the inner face of the pedestal jaws. Similar openings were employed by the Illinois Central Railroad prior to the date of the patent in suit, used, however, for the insertion of the spring seat or board and not for the insertion of bolster ends. The enlarged opening in the side frame is clearly shown in the lower portion of the opening. No reason is apparent why a bolster end with side guides could not be inserted and then raised, as in the claims in suit. Defendants demonstrate that it can be done by assembling it in conjunction with what is known as the Lehigh Valley bolster. It could hardly be deemed invention to make it larger vertically in order to accommodate a larger bolster end.

In view of the prior art as above stated, it appears that, in and by

itself, complainants' side arch with its transverse opening presented no novelty of a patentable nature. The invention, if there be one, must be found in the combination, with reference particularly to that part thereof pertaining to the manner of inserting and removing the bolster ends from the opening. Complainants' counsel assert that the only structural novelty of the patent consists in the enlarged opening in the side frame, and that the invention resided in the conception that making the opening in that form enabled its use with all kinds of bolsters. As construed by counsel for complainant, the patent does not disclose a means for removing the bolster bodily from the truck. In order to do that, the side-frames or arches of the truck must be spread apart. Were it otherwise, it is apparent that defendants' arch opening would not respond to that requirement. So far as the patent discloses, however, the removal of the whole bolster might have been the thought in the inventor's mind. The Hardie patent is the first in the car-truck art to employ a one-piece side-arch capable of use with a bolster having ends provided with columns, side guides, or lips and integral therewith. To insert a bolster end so provided in the old built up side-arch, it was usual to remove the top bar of the arch or truss or temporarily take off the side guides or lips. When the one-piece side-frame came into use manifestly there was no top bar to be removed, and consequently no means for inserting bolster ends with integral side column lips in such a manner as to cause them to be locked in the opening, without removing the lips or guides, or using an opening resembling the button-hole method, as defendant's expert terms it; i. e., that form used by Hardie.

The removal of the side guides involved considerable trouble, so complainant claims, and was, to a considerable degree, superseded by the device seen in the patent in suit. There is disclosed, however, in Schoen patent No. 542,427, granted July 9, 1895, a means whereby bolsters with top guides can be inserted in any transverse opening in side-frames whether built up or made of one piece. The Schoen side-frame is of the latter type. The bolster top guides in Schoen are released from contact with the top bar of the opening by removing the springs as in Hardie's device, and the opening is made large enough to permit of the removal of the whole bolster—a feature disclaimed by Hardie, thus limiting Hardie to bolster ends provided with side column guides. Schoen makes room in his opening for the insertion and removal of his bolster-end, vertically, while Hardie does it laterally. In both the clearance of the lugs or guides is effected by the removal of the springs, thus providing a means for alignment of the guides with openings through which they could be withdrawn. It is complainants' contention that Schoen's device never went into general use.

As to the so-called button-hole method, defendant insists that there was no invention in transferring it into the bolster art since its use was so well known in all manner of devices requiring a locking of the parts in an opening with fixed sides, as in the assembling of the parts of a bedstead, corset fastenings, and innumerable other constructions. Some attempts were made by patentees to adjust the

the bolster-end having integral side guides to an opening in the one-piece metal side-frame. Goltra tried in 1879 in his patent No. 223,207, but testifies as a witness herein that he does not remember how he proposed to get the bolster in and out of the opening. His patent does not show.

Nothing short of the opening in the side-arch with the contracted upper portion or the enlarged lower or central part would avail to release his hapless lip-incumbered bolster-end.

Defendant manufactures under a modification of patent No. 857,937, granted to C. G. Harrington for a car-truck on June 25, 1907, known as the Wolff truck side-frame. This was placed on the market in its present form early in 1908. Another form seems to have been used several years earlier. Bettendrof shows the defendant's opening in substance in his patent No. 740,617, granted October 6, 1903. Barber's patent, No. 620,092, granted February 28, 1899, discloses a diamond side-frame having a transverse opening with an enlarged lower portion, but not in connection with bolster ends. Hardie's side-frame opening was placed on the market in 1897. His application was filed January 25, 1896. The Goltra & Schaffer patent for the bolster with side-column guides had been granted more than two years previously. At the time of the issuance of the patent in suit no way was shown whereby the Goltra & Schaffer patented bolster could be used with a solid metal side-frame, except as might be deduced from the prior art above set out, although more than two years had elapsed since this bolster came upon the market. That its use in metallic car trucks was desirable is demonstrated by the commercial success following its use by Hardie. It would seem that those engaged in that art would have appropriated it as soon as known had it required mere mechanical skill to adjust the side-frame opening to its use. The question is not entirely free from doubt, but, all things considered, I am of the opinion that it possesses some patentable novelty and a small degree of invention. Therefore, though reluctantly, the patent in suit is held to be valid.

I have little trouble in holding that defendant's device infringes. It has the enlarged portion in its opening whereby the bolster-head may be inserted and lifted into locked contact with the contracted upper part. The difference in method is not appreciable. The complainant may prepare its decree accordingly.